UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| BRIAN INGRAHAM, <br>     Plaintiff, <br><br>   v. <br><br> UTGR, Inc., <br>     Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | No. 1:19-cv-00626-MSM-PAS |

MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

  Defendant UTGR has moved for Summary Judgment (ECF No. 16) to resolve Brian Ingraham's Complaint that UTGR's termination of his employment at Twin River Casino violated the Family and Medical Leave Act, 29 U.S.C. § 2612(a)(1), the Rhode Island Parental and Family Medical Leave Act, R.I.G.L. 1956 § 28-48-1 *et seq*, and the Rhode Island Civil Rights Act, R.I.G.L. § 42-112-1, *et seq*.  Mr. Ingraham was employed at Twin River as a floor supervisor from November 30, 2015, until his termination on May 8, 2018.

## I.   BACKGROUND

  Mr. Ingraham's employment troubles began with a car accident in 2017 in which he suffered injuries causing him to be on medical leave from September 13, 2017, through December 14, 2017, exhausting the allowable guaranteed leave time under both federal and state law.  He returned to work on December 15, 2017, with

1

lingering migraine headaches that were exacerbated by his assignment to gambling pits on Twin River's smoking floor. Regular rotation of employees allowed him to be assigned to pits in the non-smoking section only once or twice weekly. (ECF No. 24-1, Ingraham Dep. 29:2-5.) Following his return, he was absent several times including for several days in April 2018. It was around that time that he informed his employer that he could no longer work in a smoking section, citing his disabling migraines and producing a doctor's note to that effect. Twin River offered to accommodate his disability by assigning him exclusively to a non-smoking floor but only if he would change from a day shift to a swing shift. He replied that "family obligations" prevented him from accepting that change (ECF No. 17-1, p. 30:3-5), and Twin River thereupon terminated him.

While Mr. Ingraham alleges he was terminated in retaliation for taking family leave, UTGR maintains that a neutral application of its attendance policy played the primary role, along with his refusal to accept the reasonable accommodation of a non-smoking shift. The attendance policy assesses points for tardiness, absences, and "no-shows" without consideration of fault or justification. Mr. Ingraham earned points for each of these events. A point was removed for each 30-day period where points were not imposed. Pursuant to Twin River policy, a total of ten (10) points was grounds for termination. At the time of his car accident, Mr. Ingraham had five (5) points, which were then reduced to three (3) during the time of his FMLA leave. However, absences following the leave caused his point total to increase to eleven (11), surpassing the total allowed. Mr. Ingraham exceeded the 10-point allowance

2

in April 2018, because of his multiple-day absence, but he was not immediately terminated. He was instead terminated upon his refusal to entertain a change to swing shifts, while failing to pursue any other alternatives.

## II. STANDARD OF REVIEW

Summary judgment's role in civil litigation is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Garside v. Osco Drug Inc.,* 895 F.2d 4. 50 (1st Cir. 1990). Summary judgment can be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." *Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 52 (1st Cir. 2000) (quoting *Sanchez v. Alvarado,* 101 F.3d 223, 227 (1st Cir. 1996)).
In ruling on a motion for summary judgment, the court must examine the record evidence "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." *Feliciano de la Cruz v. El Conquistador Resort & Country Club,* 218 F.3d 1, 5 (1st Cir. 2000) (citing *Mulero–Rodriguez v. Ponte, Inc.,* 98 F.3d 670, 672 (1st Cir. 1996)). "[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." *Coyne v. Taber Partners I,* 53 F.3d

3

454, 460 (1st Cir. 1995). Furthermore, "[s]ummary judgment is not appropriate merely because the facts offered by the moving party seem more plausible, or because the opponent is unlikely to prevail at trial. . . . If the evidence presented 'is subject to conflicting interpretations, or reasonable [people] might differ as to its significance, summary judgment is improper.'" *Gannon v. Narragansett Elec. Co.,* 777 F. Supp. 167, 169 (D.R.I. 1991 (citing and partially quoting 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice & Procedure,* § 2725, at 104 (1983)). The facts in this case are largely undisputed.[1]

### III. ANALYSIS

Mr. Ingraham's claims concern two statutory rights, both of which prohibit retaliatory terminations. While they share a basic structure of proof and some similarity of elements, they are nonetheless distinct statutory schemes.

### A. Violation of the Family Medical Leave Acts (Counts I and III)

The federal and state claims related to medical leave are analyzed in exactly the same manner. *Washington v. Honeywell Int'l Inc.,* 323 F. Supp. 3d 309, 315 n.4 (D.R.I. 2018). While Mr. Ingraham terms the basis for relief a violation of the Acts

---

[1] Mr. Ingraham's Statement of Disputed Facts (ECF No. 24) takes issue with only three of UTGR's assertions, none of which are material. Mr. Ingraham asserts that all the second floor, rather than simply a portion, was nonsmoking. He adds migraines to his list of car accident symptoms, which UTGR does not dispute. (ECF No. 27.) UTGR does dispute the extent of the interference with work that the migraines caused, and it acknowledges that Mr. Ingraham's supervisor was aware that the April 2018 absences were due to his medical condition (*Id.,* at ¶ 52), but this case does not turn on a continuing disability. Finally, Mr. Ingraham maintains that he did not reject the swing shift option "flatly," but because of "family obligations." None of these disputes require the case to go to a jury.

4

themselves, he was not denied medical leave and, indeed, was granted the maximum amount of leave to which he was entitled.[2] The federal Act, however, prohibits an employer from retaliating against an employee who has invoked its benefits. *Colburn v. Parker Hannifin/Nichols Portland Div.,* 429 F.3d 325, 331 (1st Cir. 2005).

A claim of retaliation is subject to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 800-06 (1973); *Hodgens v. General Dynamics Corp.,* 144 F.3d 151, 160 (1st Cir. 1998). Pursuant to that familiar paradigm, the employee first bears the burden of demonstrating a *prima facie* case of retaliation, which in this context is satisfied by a showing that "(1) he availed himself of a protected right under the FMLA; (2) he was adversely affected by an employment decision; [and] (3) there is a causal connection between the employee's protected activity and the employer's adverse employment action." *Id.* at 161. Once the employee satisfies that burden, the employer must come forward with a legitimate, nonretaliatory reason for the termination. *Id.* Finally, the burden swings back to the employee to show that the reason offered was pretextual, thus permitting the inference of retaliation. *Id.*

In this case, there is no dispute that Mr. Ingraham took family leave and that some five months after he returned, he was terminated, an adverse employment action. Where Mr. Ingraham falters, however, is at the third step, requiring that he demonstrate a causal connection between the exercise of his right to take leave and

---

[2] The Federal Act guarantees up to 12 weeks of leave, 29 U.S.C. § 2612(a)(1); pursuant to the Rhode Island act, Mr. Ingraham took 13 weeks. R.I.G.L. 1956 § 28-48-2(a).

5

the subsequent termination. He can point to no direct evidence of a causal relationship. Instead, he relies purely on what he terms the "temporal proximity" of his leave (from mid-September to mid-December) to the termination in May, nearly five months later. In *Colburn*, the First Circuit determined that a termination just short of *four* months after the employee's return "raise[d] no inference of retaliatory motive." *Colburn,* 429 F.3d at 338. While temporal proximity is one factor to be considered, *Carrero-Ojeda v. Autoridad de Energia Electrica,* 755 F.3d 711, 720 (1st Cir. 2014), "chronological proximity does not by itself establish causality, ..." *Wright v. CompUSA, Inc.,* 352 F.3d 472, 478 (1st Cir. 2003).

There were two non-discriminatory reasons put forth by UTGR for his termination. First, he had exceeded 10 points by application of a neutral, no-fault, non-discriminatory attendance policy. Second, Mr. Ingraham had taken the position when submitting a doctor's note in April 2018, that without an accommodation to a nonsmoking area he simply could not continue to work at Twin River. Once the attempt by UTGR at finding a reasonable accommodation failed because of his rejection of a swing shift, the fact is that he was saying, bluntly, "I can't work here anymore." His termination by an employer faced with that pronouncement seems hardly pretextual.

There is no genuine dispute about any of the facts relative to causation. Therefore, in the absence of any real evidence supporting an inference that Mr. Ingraham was terminated because he availed himself of medical leave, he has failed

to sustain his burden of making out a case of retaliation under either the federal or state medical leave act.

### B. Discrimination on Account of Disability (Count II)

Mr. Ingraham contends that he was terminated because of his disability, in violation of the Rhode Island Civil Rights Act. R.I.G.L. § 42-112-1, *et seq.* Although he has not brought a claim pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12112(a), his state law claim is analyzed under the same rubric. *Washington*, 323 F. Supp. 3d at 318. The analysis of this claim follows the same burden-shifting construct of *McDonnell Douglas*, although the elements of the *prima facie* case are different. Mr. Ingraham must first show (1) that he was "disabled within the meaning of the ADA," then (2) that he "was qualified to perform the essential functions of the job, either with or without reasonable accommodation," and, finally, (3) that he suffered adverse employment action because of the disability. *Washington,* 323 F. Supp.3d at 318. Once a *prima facie* case is made out, the burden shifts to the employer to provide a legitimate, non-pretextual reason for the adverse action. *Id.*

Mr. Ingraham has satisfied his burden of showing a disability. UTGR points to his work for several months after his return from leave as evidence that he no longer had a disability, but Mr. Ingraham has proffered evidence that while his migraines were eased somewhat by steroids during that period, they continued to be debilitating. The core of this dispute is not about whether Mr. Ingraham has a disability. Instead, it is about whether UTGR offered a sufficient accommodation

7

with respect to the second element of a *prima facie* case and whether its reasons for discharging Mr. Ingraham were pretextual.

1. Reasonable Accommodation

After declaring that he could no longer work in a smoking area in May 2018, Mr. Ingraham met with his supervisor, Thomas Castrignano. Mr. Castrignano investigated whether there were any vacancies in slots on non-smoking floors and discovered that there were none during the day shift. He did, however, extend an offer to Mr. Ingraham to take over a pit on the nonsmoking floor during a swing shift which would involve nighttime hours. Mr. Ingraham turned down that offer citing "family obligations" that prevented him from accepting the job. In his deposition, Mr. Ingraham testified that he had two teenagers at home and that his wife left for her job at 3 a.m. (ECF No. 25-1, p. 29:12-13). The starting time for a swing shift ranged from 6 pm to 10 pm (ECF No. 17-4, p. 32:19-21.)

The parties do not dispute the underlying facts surrounding a reasonable accommodation: (a) Mr. Ingraham was offered only a swing-shift non-smoking area post; (b) Mr. Castrignano determined there were no vacant spots as a day shift supervisor except on poker tables for which Mr. Ingraham was not trained; (c) Mr. Ingraham was not eligible under company policy for retraining for a poker table because he had amassed more than 5 negative attendance points;[3] and (d) Mr.

---

[3] At one point in his deposition, Mr. Ingraham testified that he did not request retraining to poker tables. (ECF No. 17-1, p. 34.)

Ingraham's response to the swing shift offer was simply that "family obligations" prevented him from taking it, without further explanation.

The resolution here turns not on a factual dispute but on the law. An employee who seeks a transfer of job assignments as an accommodation "must demonstrate that she can perform the essential functions of the position she desires." *Audette v. Town of Plymouth, MA,* 858 F.3d 13, 20-21 (1st Cir. 2017). Here, there is no dispute that Mr. Ingraham was not qualified to supervise a poker table. While he complains that others had been retrained for that position, UTGR was entitled to rely on its neutral non-discriminatory policy of not being willing to retrain employees who had had too many absences from work. That is a reasonable business decision which, presumably, saves the employer from retraining employees who have a demonstrated background of not showing up for work, thus making the retraining a waste of time and resources. UTGR was under no obligation to create a vacancy, or design a new job, on the day shift to accommodate Mr. Ingraham. *Phelps v. Optima Health, Inc.,* 251 F.3d 21, 27 (1st Cir. 2001); *see also, Audette,* 858 F.3d at 21.

On the realistic assumption that an accommodation may not readily be at hand, the Act requires employer and employee to engage in an "interactive process" that "requires a great deal of communication between the employee and employer." *Eustace v. Springfield Public Schools,* 463 F. Supp.3d 87, 107 (D. Mass. 2020). Here, UTGR offered a nonsmoking workplace, but Mr. Ingraham rejected it without any attempt to explore it further. *See Jones v. Nationwide Life Inc. Co.,* 696 F.3d 78, 91 (1st Cir. 2012) (employer met burden where, *inter alia,* employee rejected transfer).

9

He did not tell UTGR *why* a swing shift was a problem for him. He testified at his deposition that his spouse went to work at 3 a.m. and he had two teenagers at home at that time (ECF No. 25-1, p. 29:12-13), but he did not offer that information to UTGR. By not explaining why a swing shift might be difficult, Mr. Ingraham foreclosed the possibility that a modification of hours might have been possible; conceivably he might have been able to work a shift that ended before his wife left home for her job. In addition, he rejected the offer without taking any time to determine whether he could make other childcare arrangements for the time both he and his wife would be at work.

Mr. Ingraham has not carried his burden to show that a reasonable accommodation was available but not offered to him, nor, on this record, could it be said that he performed his obligation under the ADA of participating in an interactive effort to find a solution. *Id.* "Liability for failure to provide reasonable accommodates ensues only where the employer bears responsibility for the breakdown [of the interactive process]." *Phelps v. Optima Health, Inc.,* 251 F.3d at 28. The employee has an obligation to "make reasonable efforts to help the other party determine what specific accommodations are necessary." *Ortiz-Mertinez v. Fresenius Health Partners, PR, LLC,* 853 F.3d 599, 605 (1st Cir. 2017) (quoting *Enika v. Principi,* 544 F.3d 328, 338 (1st Cir. 2008).

### 2. Pretext

Finally, the burden is on Mr. Ingraham to produce some evidence from which a factfinder could determine that UTGR's stated reasons for termination were

pretextual. He has not done so. The parties agree that by April, Mr. Ingraham had amassed eleven (11) points, enough to warrant dismissal. Tardiness is a "legitimate reason for termination." *Washington*, 323 F. Supp. 3d at 317. Even when attendance is but one factor it constitutes a non-pretextual reason. *Collazo-Rosado v. Univ. of Puerto Rico,* 765 F.3d 86, 94 (1st Cir. 2014) (University cited attendance as well as performance issues justifying discharge). UTGR had a no-fault attendance policy, so the fact that Mr. Ingraham submitted a doctor's note did not alter the assessment of points.[4] In addition, once Mr. Ingraham had rejected the swing shift transfer, UTGR was entitled to rely on his declaration that he could not come to work anymore and therefore could no longer carry out his employment responsibilities.

"To show pretext, a plaintiff 'must do more than cast doubt on the rationale proffered by the employer . . ." *Jardin v. CoxCom, LLC,* 320 F. Supp.3d 373 (D. R.I. 2018) (quoting *Ruiz v. Posadas de San Juan Assocs.*, 124 F.3d 243, 248-49 (1st Cir. 1997). In this case, there is no affirmative evidence from which a factfinder could reasonably find that UTGR's stated reasons for termination were pretextual. UTGR did not fabricate a violation of the attendance policy; even Mr. Ingraham acknowledged he was simply hoping UTGR would overlook his eleven (11) points because of the seriousness of his car accident. In addition, Mr. Ingraham does not dispute that he told UTGR that, in the absence of a day-shift accommodation, he

---

[4] Mr. Ingraham acknowledged the no-fault policy meant that UTGR was not obligated to excuse his April absence because of a doctor's note, but, as he testified at his deposition, he "figured since they knew [he] was – [he] escaped certain death in [his] car accident, they might look past it and just not give [him] any points." (ECF No. 17-1, p. 38:17-19).

simply could not come to work anymore. And there is no affirmative evidence at all from which a factfinder could infer any other motive for the termination. Thus, Mr. Ingraham has failed to carry his burden of showing pretext.

### C. CONCLUSION

UTGR is entitled to summary judgment on all Counts and its Motion (ECF No. 16) is therefore GRANTED.

IT IS SO ORDERED:

*Mary S. McElroy*
_____
Mary S. McElroy,
United States District Judge

November 16, 2022